The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Amy C. Lannard presiding. Good morning. The court is calling case number 424-0743, David Gonzalez and Emily Gonzalez v. Jeffrey Egan and Sarah Egan. And counsel for the appellate, if you please state your name for the record. Yes, good morning. My name is David Nordwall, N-O-R-D-W-A-L-L. And counsel for the appellate, would you please state your name for the record. Thank you. Megan Mertes, first name M-A-G-E-N, Mertes, M-E-R-T-E-S. Thank you. And Mr. Nordwall, you may proceed with your argument. Thank you very much. If it may please the court, again, my name is David Nordwall, and I represent defendants Appellants Jeffrey and Sarah Egan in this appeal. The trial court's finding in favor of the Gonzalez's and award of $50,000 in damages on the negligent misrepresentation claim was erroneous and against the manifest to the weight of the evidence for three separate reasons. First of all, the Egan's owed no actionable duty to communicate accurate information and thus be liable for negligent misrepresentation because they were not in the business of supplying information and any representations they made were incidental to the sale of their home. Counselor, if I could interrupt you just there briefly, if we could start there. Did the defendants raise these arguments in the trial court with regards to this issue of supplying information in the duty? I was not the trial counsel, but my review of the record shows it was not specifically raised. However, I don't think that matters, Your Honor. Would those arguments be forfeited then? No. As the plaintiffs, the Gonzalez's had the burden of proof on each and every element of a negligent misrepresentation claim. So they had a duty to communicate accurate information is a necessary element of the negligent misrepresentation claim. And there is nothing in the record which shows that the Egan's knowingly waived or excused the Gonzalez's from proving any and all elements of their claim. And this is a bench trial, and it differs from a jury trial, as the justices know. And one difference is that the judge is presumed to know and apply the law. And this presumption is only rebutted when the record affirmatively shows the contrary. And that's what's happened here. This presumption is rebutted because there's no evidence that the Egan's were in the business of supplying information. This is no different than the case of Stewart versus Thrasher, which we cite heavily in our brief. And as a fourth district opinion, where the court found that the defendants as home sellers owed no duty to the home purchasers, even though the issue did not appear to be raised in the trial court. There was no reference to it in the trial court's findings. Rather, the trial court focused and found, which was the basis of the appeal, found that there were no misrepresentations, which meant that, first of all, that there was a duty owed, even though it wasn't directly addressed. So there was no knowing waiver. And because this is a bench trial, there's nothing you can point to. It's not like you can point to in a jury trial where you have a jury instruction where the duty doesn't, where they don't include duty. There is no evidence in this case to suggest that the issue was knowingly waived. And the judge was presumed to know the law. And just like in the Thrasher case and the Stewart case, this court can do its own evaluation to determine whether or not the duty existed. And there was no duty here. The Illinois Supreme Court, through its adoption of the economic loss rule, also known as the Mormon doctrine, limits the duty that is actionable in a negligent misrepresentation case, whereas here the plaintiffs are only seeking economic losses. There's no dispute in this case that that is all the plaintiffs are seeking. That is, all that the Gonzaleses are seeking was the repair costs for the damage to their property, for their own property. Thus, as indicated in Mormon and subsequent Supreme Court decisions, including the first Midwest bank case from 2006, which we cite in our brief, the plaintiff must prove that the defendant is in the business of supplying information for the guidance of others in their business transactions. Now, the Supreme Court and the appellate courts have noticed a distinction between pure information providers, whose product was information and no tangible product, and those who provide a tangible product or non-informational goods and services, where the information is offered by the defendant relates to a tangible good or service. The information is considered merely ancillary or incidental, and the defendant is not in the providing information and cannot be liable for negligent misrepresentation. Now, the case law talks about sort of examples of each. Examples of a party supplying pure information where actionable duty is owed include inspectors, include real estate brokers, includes people whose the end product of their conduct is information, is a termite inspection report, which says whether or not there was termite damage in the property. Examples of parties where the information related to tangible goods or non-informational goods, that's that the parties who brought, I apologize, where the information related to tangible goods or non-informational services include sellers of products, the sellers of tangible goods, sellers of construction materials, or an employment agency that supplies employees, that's the Fox Associates case, or title insurers who just provide an insurance of title, that's the first Midwest case, or sellers of a home, which is the Stewart case and which is our case. Any information, the Egan's were not in the business of supplying information for the use for the business matters of others. They were in the business of selling their home, a tangible product, and this makes it indistinguishable from the Stewart case, where the purchasers of a home brought a negligent misrepresentation claim and other claims against the sellers to recover for undisclosed termite damage. Now, the trial court, like I indicated before, found that the sellers had not made any misrepresentations and the purchasers appealed to this court, arguing that there was evidence. This court affirmed judgment in favor of the sellers, finding, quote, plaintiffs here could not, as a matter of law, succeed under a negligent misrepresentation theory against the thrashers because the thrashers are not in the business of providing information. That's at page 14 of the decision, 242 Illap 3rd, 14. The court went on to say this is because, quote, the seller of a home is not in the business of providing information. In reaching this decision, the Stewart court distinguished between the home owners who sold their house and a termite inspector who was in the business of providing information, but a home seller is not. This ends the resolution of this case. The Gonzales's response relies heavily upon the Lyons v. Christ Episcopal Church case, where the appellate court found that a church could be liable for negligent misrepresentations that a house, their rectory house, was connected to sewers when it actually wasn't. But this decision was in 1979, and it's three years before the Illinois Supreme Court's decision in Mormon, which adopted the economic loss rule and limited the duty for a negligent misrepresentation for a party who is in the business of supplying information for the use of others. In adopting the economic loss rule, the Mormon court explained that where the only damages are economic losses, the parties should resolve their dispute by contract principles and remedies of contract rather than expanding it into tort liability. There's no dispute that the Gonzales's are only seeking to recover economic losses here. There's also no dispute that the Gonzales's and the Egan's had a contract, so there were potential contractual remedies, if appropriate. Accordingly, the Egan's owed no actionable duty in negligence, and the trial court's finding was against the manifest way to the evidence. The second independent grounds for the trial court's error is it was its finding that the Egan's made negligence. Can I ask a question, please? Certainly. At any point in time, before, during, or after trial, did your client indicate, whereas here purely economic damages are sought, this court has imposed a duty on a party to avoid negligently conveying false information only if the party is in the business of supplying information for the guidance of others in their business transactions? There is nothing in the record that indicates that, your honor. Okay, thank you. Certainly. Moving on to the second grounds, there is no evidence of a negligent misrepresentation. Again, this court explained in the Stuart Thrasher case that a negligent misrepresentation is a representation the maker believes to be true, but is in fact false. In other cases, the Hahn case that's cited in the briefs, the court notes that the defendant need not know that the statement is false, and its own carelessness or negligence ascertaining its truth will suffice. In this case, the Gonzalez's have identified two representations that they claim are false. First, the representation by Sarah Egan to Emily Gonzalez's mother, and also Emily, who was present at the time, in March 2019, where in answer to the mother's question about water problems, Sarah stated that there was no reoccurring water problems, and then Sarah talked about rerouting the sump pump from the septic system to the drain pit. And that was referenced to work that was performed in the fall of 2016 by Loescher Plumbing, where they found there was an issue that the water, the sump pump was putting the water into the septic tank, which was too close to the house, so they rerouted it. The second representation is the Real Property Disclosure Report on March 31, 2019, where the Egan's checked the box no to the statement, I am aware of flooding or recurring leakage problems in the crawl space or basement. Those are the two representations or the misrepresentations that were the basis of the Gonzalez's claim and the basis for the court's finding. There is no evidence that these statements are false, as there was no evidence. Counsel, if I may, both defendants testified at trial that they were aware the basement had flooded more than once, correct? Correct. And so if the defendants argue that they, I guess let me rephrase that, how does that make the defendant's statement that they were not aware of flooding in the basement true? They were not aware of recurring flooding in the basement, because the incidents of flooding, there were twofold. There was one in 2014, which is when the power testified that they were aware the basement had flooded more than once, correct? Yes, that is correct. That is correct. And the first incident was in 2014, when the power went out, so the sump pump would not work. And the second incident was in 2016. Well, there were two incidents in 2016. There was one with water flooding in from the egress window that was fixed in early 2016. And even the trial court found that that had nothing to do with the type of flooding at issue here, so it did not matter. And then the second of all was in the fall of 2016, there was flooding, which is where they performed the repair work by Loser Plumbing, came in and rerouted the sump pump. And after that time, there was no other, the Egan's did not have any other water through the time of March 2019, when they made the representations. Well, counsel, you don't dispute that the basement flooded right after the plaintiffs purchased the home, correct? The basement flooded after the sale was completed. The home was, the contract was entered into on March 31st. After the closing. So after the closing, the flooding, the Gonzaleses reported they were first aware of water in the basement on May 30th of 2019. They closed on May 15th, and they thought there was like some dampness in the carpet at that time, but they didn't see any water. They testified they were first aware of water in the basement on May 30th, 2019, when Emily Gonzales was taking some boxes down and moving things into the basement. So that's when they first saw it. So that's, but that's two months after the representations were made that are actionable. It was, that's afterwards. But when you argue that they believe they reasonably fixed these problems, I mean, doesn't Sarah Egan basically acknowledge in her text that the house is susceptible to flooding when she tells Ms. Gonzales about the battery backup on the sump pump only lasts a limited amount of time. They reference, you know, she goes through those additional texts. So doesn't that suggest that she's aware of the reoccurring problem of flooding or leakage and the other texts that are sent in the case? But everyone knew that there was the possibility of flooding because that's why there was a sump pump. And everyone knew that the purpose of a sump pump is to pull water away from the house to avoid flooding. So the text, the text you're referring to when Sarah Egan texted to remember to switch the power from the Egan's name to the Gonzales' name because the battery backup doesn't last, that was based upon Sarah's experience and the Egan's experience in 2014 when the power went out, the sump pump stopped working and there was flooding. That doesn't, I mean, if the sump pump doesn't work at all, there's going to be flooding regardless of whether it had been flooding in the past or not. That's the whole purpose of a sump pump. And there's no dispute that everyone knew that there was a sump pump there. And that was the purpose of it. So that she's... So counsel, the whole purpose of the sump pump is to prevent recurring flooding. Is to prevent water, is to remove water from near the... It's not a one-time deal. Absolutely. It's not a one-time deal. It's not like you put it in the sump pump because it happens one time. You put it in a sump pump because of recurring flooding, right? But the last incident of flooding... Okay, hang on. Yes, yes, yes, yes. Okay. I agree. Yes, yes. I apologize.  Yes, I agree with you, Justice. But the last time, the only evidence in the case of the last time that the Egan's experienced flooding was in the fall of 2016, where Losher Plumbing come out and rerouted the sump pump. And indeed the trial court even acknowledged that a seller doesn't have to disclose any of this information if they believe that what repairs they have done, remedial actions that they have done, that they reasonably believe that the condition had been corrected. And that's on page 162 to 163 of the record, also in the appendix page six through seven. Of recognizing the trial court made that finding, the trial court obviously then in listening to the testimony of the witnesses concluded that they weren't credible. I think what the trial court instead did is look to see what happened and attribute the fact that there was flooding at the end of May of 2019, to say that that shows that they knew in March of 2019 that there was recurring flooding. And there's no evidence of that. The undisputed evidence is that it was heavy rains beginning in May of 2019, unusually heavy rains. I think everyone acknowledged it. Every witness acknowledged it. And Jeffrey Egan even explained that he couldn't even work in the farm because of these heavy rains. Also, when the rains stopped, the flooding stopped in the house. So it was these unusually heavy rains, but there's no indication. There was no testimony from an inspector coming in and saying, look, I can see there's all this water damage, which would have occurred in 2017 or 2018 or early 2019. So they must have known there was water. They must have known there was recurring flooding. There is no evidence that the Egan's were aware of any recurring flooding after what they believe fixed the problem in the fall of 2016. So while there's evidence of what happened afterwards, you can't attribute it to the misrepresentations that were allegedly, that were purportedly made in March of 2019. In March of 2019, there is no evidence that the Egan's were aware of any of any recurring water problems. The last time they were aware of water was two and a half years earlier, which they believed had been fixed when they paid Losher Plumbing to come out there. So there's no evidence. The third ground, and just I'll be very brief on this, is that the trial court's award of $50,000 in damages was against the manifest weight of the evidence because it was not fully supported by evidence in the record. The trial court found that the Gonzalez's were entitled to the full $31,751 paid to Mid-America basement systems. The Egan's do not dispute that there is sufficient evidence in the record to support this finding, including the paid invoice that was admitted into evidence. But the trial court erred in awarding the remaining $18,249 for a total $50,000 judgment based upon this Osmer Woodworking Estimate, as that was an admissible hearsay. It was an out-of-court statement. Counsel, if I may, did defense counsel raise a hearsay objection as to the Osmer Woodworking Estimate? Yes. A hearsay objection? Yes. Okay. Would you look, I know the trial court ruled as if it were a hearsay objection, but I would like the reference in the record to where the specific hearsay objection was made. Foundational objection. I understand. You give me a minute, I can, let me. You can make the reference in rebuttal if you prefer. I was going to say, if you'd like, I can give it to you for rebuttal. And I'll allow you to continue with your argument then. Okay. And again, like I said, it's going to be brief. The written estimate from Osmer Woodworking was clearly used for the truth of the matter asserted. So it was inadmissible. And there is no basis to, there is no basis in the factual record, in the evidentiary record, to award any damages beyond the $31,000 from MidAmerica. The only evidence to support the damages award were the remodeling costs identified by the that based upon the estimate she received, remodeling costs could be over $25,000. But again, that's based purely on hearsay. So you can't avoid hearsay by having someone testify about the hearsay. And the Rock River Water case we cite talks about this. The Gonzaleses also note that the trial court relied on its own personal experience to find the amount of the estimate was fair and reasonable. But this again begs the question because the estimate was not admissible. The trial court's own personal experience is no substitute for admissible evidence. Counsel, I believe your time is up at this time. You will have time in rebuttal. Thank you very much. Counsel, you may proceed with your argument. May it please the court. My name is Megan Mertes and I have the pleasure of representing Emily Davy Gonzales and David Gonzales today in this matter. To answer your question, Justice Leonard, there's absolutely no objection at the trial court level regarding this duty issue. It was never raised and therefore it was forfeited at the trial court level. My brief goes into this issue though about the duty because there absolutely was a duty on the on the Egan's to provide the accurate information in this matter. The Egan's now want to say, well, we weren't in the business of supplying information and they cite the Stewart case. I'm not asking your honors to overturn Stewart. It simply just is not applicable if you look at the reasoning behind the Stewart case and also other court cases that are discussing this Mormon exception. In this case, the duty of supplying information, this simply isn't just a tangible product. The Egan's were the only people that had this information that the basement had repeatedly two times that they testified to had water in it, that they failed to disclose in the real estate disclosure statement. And then we also have the testimony at trial that Justice Darvin, you pointed out that the trial court is the finder of fact who is determining the credibility of the witnesses. And in this case, determined that the Gonzalez's were more credible than the Egan's. The trial specifically in its decision referenced the fact that the trial court didn't believe the Egan's, simply didn't believe their testimony of that, that they believe that the carpet was wet, that the humidifiers were left there. And that the fact that Sarah Egan was so concerned about the gutter placement and the sub pump was because there had been water in the basement that was occurring. So in this case, when we look at whether or not there's a duty, there's absolutely a duty to supply information. The Egan's were the sole people that knew regarding the facts of their basement and they failed to disclose that. Moving on to the other evidence in this case, Mr. Nordwall wants to say, well, they didn't have, they thought it was fixed. That is more like the case of the Lyons, which is the church where they reasonably relied on a contractor who said, well, we think the church is connected to the sewer. And then when they were selling the property, claimed it was connected to the sewer, that court found that it was unreasonable to rely on that assumption from the contractor that it was, well, it's probably connected. So the facts of this case are more like the Lyons case than the Stewart case. In the Stewart case, the sellers, first of all, the trial court had found after analyzing all the evidence in that case, that there was no negligent misrepresentation. And the buyers of that property were arguing that the manifest weight of the evidence supported that there was negligent misrepresentation. But in the Stewart case, it was a termite inspection that they said they purchased the property and then discovered that there was termite damage. And they said, well, you know, they knew that there was termite damage. There's absolutely no evidence that they knew that there was termite damage at the trial court level. In this case, you have the 2014 water in the basement, the 2016 water in the basement, and then you have the testimony of the Gonzaleses that the carpet was damp, dehumidifiers were left, and then the tax after the sale. The Gonzaleses purchased this house, and within a month, they had a, when they purchased it, they had a finished basement with a bedroom. And within a month, they have standing water, no carpet, drywall ripped out, it is completely gutted. If I may, and your clients never contacted the other party and advised them of those issues, correct? That's correct. And just for the sake of argument, if we say that there were no flooding or leakage problems in the basement after the repairs in 2016, is there evidence that would still allow you to prevail in the negligent misrepresentation claim, and what would be the basis of that? It would, well, the evidence would be the testimony of the parties. When I believe at the trial court, both Gonzaleses testified that when they're ripping up the carpet, it ripped up really easily. It felt like there had been tears. There's this crack down the middle of the basement that the carpet was placed over. They visibly saw when they ripped up the drywall, they visibly saw markings that they associated with potentially prior water damage. So there is their testimony when they are ripping up the basement and their observations that they believe that there had been other water issues in the basement. Then we, if we then look at the damage issue that's raised, the damages were awarded were $50,000. The first part of that was for the Mid-America Basement Estimate, which was approximately $31,000. In the decision, in the trial court's decision, the trial court relied on its common sense and the testimony of the parties and awarded the, up to the cap of $50,000, a little over $18,000 to refinish the basement. There was this testimony regarding the estimate and that was based on questioning to Emily Gonzales and David Gonzales that they desired to refinish the basement. And they testified that they thought it was about $25,000. And then they talked about the Asmar Woodworking Estimate. And that's where there was this objection regarding the entry of that estimate. But there was no objection when Emily Gonzales was testifying that she thought it was likely to cost $25,000 to fix the basement. And when, and I asked the question of appellants counsel, but when that objection was made to the Asmar Woodworking testimony, what was the basis of that objection? Was it hearsay or was it Leave it with hearsay, Your Honor. Thank you. And the court, the trial court awarded $50,000 damages and that additional $18,000 was not speculative. The trial court specifically in his ruling stated that he was basing it on common sense. And the fact that, you know, he sat and listened to the testimony of the parties, observed those photos of the finished basement, and then they completely gutted on finished basement and awarded my clients $18,000. It's obviously probably going to cost more than $18,000 to refinish the basement. But to say that that award of $50,000 damages is against the manifest weight of the evidence would be to substitute the appellate court's reasoning for the trial courts. And that simply isn't what should happen. So for those... What about, if anything, does this play in that there was a home inspection and the home inspector did not find anything wrong with the house? Yes, Your Honor. There's a home inspection. You know, the home inspection typically does not tear up carpeting to see this crack or to destroy drywall, which my clients had testified regarding their observations when they were ripping apart the basement. So, you know, home inspection, you know, there wasn't any evidence introduced other than that there was this home inspection. So if there are no other questions, I believe that this court should affirm the trial court's reasoning. First of all, the duty issue was not raised at the trial court level. And for the reasons stated, even if this court wants to discuss the duty issue, that this would be a case that the court should find that a duty exists, that this is the case. It has the facts to support a negligent misrepresentation. The Egans were in the business of supplying information. This is simply not just a tangible product that was being sold. It is like the Ducoin case where, you know, there's a thin line between information and goods. And this would be the case that would support that they are on the duty of supplying information in relation to the sale of their home, especially when there was no realtors involved. It would be illogical to say that a real estate broker could be held liable for negligent misrepresentation, but the actual sellers who are doing it all themselves cannot be held liable for negligent misrepresentation, especially given the facts of this case, that there were these two prior incidences where there was water in the basement, and it was not disclosed in the real estate disclosure statement, and then also the testimony following the sale of the house. Therefore, for those reasons, this court should affirm the trial court's decision. Thank you. Mr. Bergwald, your time in rebuttal for your argument. Yes, I'll be very brief. I'm going to work backwards. I'll work with the damages first. I did go and quickly looked at the record, Your Honor, and on page R53 through R55 of the record is the first references to the estimate, and that is where Egan's counsel objected for lack of foundation and then goes on to explain why. He objects lack of foundation on R53 and then goes on to explain why on R55 is that the contractor has not testimony and foundation that will support the estimate. That's the whole basis of hearsay, is that it's an out-of-court statement, and while the person who prepared the estimate could come in and testify about it, other people cannot. Then I did a quick search on hearsay to find it, and certainly when the court was issuing its finding, and this is on R173, which is also A17 of the appendix, when defense counsel again brought up, you know, we had objected to that estimate, the court said, yep, my memory says it was a hearsay objection nonetheless, and then went past beyond it. Even plaintiff's counsel acknowledged that it was a hearsay objection. Everyone was working under the assumption, including the trial court, most importantly, that there was a hearsay objection that was raised because there was foundation for the admissibility of the estimate. But the lack of foundation objection wasn't that. It was that the witness was not qualified to say what needs to be done. The lack of foundation, that's the objection on R53, lack of foundation that the witness is qualified to say what needs to be done. That's different than a hearsay objection. Well, and then on R55, is that there's no testimony in the foundation that'll support this as a fair and reasonable estimate for the work identified. Yeah, because the witness is not qualified. That was the nature of the objection. Well, I would respectfully disagree that the trial court recalled that it was a hearsay objection. Everyone was working on the assumption it was a hearsay objection. And they can be mistaken. That is true. And certainly it's not as clear as it could be. I will acknowledge that. But there was no evidentiary foundation to use the estimate because it's an out-of-court statement. You needed someone to lay the evidentiary foundation that it was a fair and reasonable estimate. And the fact that the trial court said that, well, in my opinion, it would cost $25,000 to remodel the house. There still has to be some admissible evidence on this. Counselor, can I take you farther down on R55? You gave us the first reference by Mr. Zollinger. The second reference is, however, Your Honor, without the foundation that this witness is qualified to say that this is fair and reasonable, an estimate from a contractor needs testimony from the contractor. It's not a paid bill. So, yes, if you take the section you quoted, you could reasonably argue from that, oh, it's a hearsay objection. But no, if you follow it down, Mr. Zollinger is making it very clear that it's a foundational objection based upon the lack of qualifications of the witness. True? Let me see. And I'm scrolling down to page R56 as well. Yeah. Well, even then, that's true. There was no evidentiary foundation for that, if you want to hold it that way as well. I mean, maybe it's tomato-tomato on this. The objection is that- No, because your objection has to be specific. If you fail to make the proper objection and you make a specific objection and it's the wrong one, is it like horseshoes? Well, it's close enough. Well, except that the difference is that the trial court testified that or stated that he believed it was a hearsay objection. So everyone was working under the assumption of hearsay. Even if we go back and parse through it, everyone at the time was assuming it was a hearsay objection. Trial counsel indicated she thought it was a hearsay objection. Everyone was working under that assumption. So this isn't one where I don't think the horseshoe analogy is accurate. Thank you. But anyway, the trial court, there still has to be something in the record. It's as if there was a personal injury case and there's clear evidence that the plaintiff says that he's going to need a future surgery. There still has to be some evidence introduced in the record to determine what a future surgery could cost. And the judge or the jury can't just say, well, I think it would cost $50,000. Therefore, I'm going to award it to you. There has to be some evidence in the record for the court to make a basis of what a reasonable amount was. Your time has expired. I will. So thank you. And otherwise, thank you very much for your time. The court will take the matter under advisement and the court stands in recess.